IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) CASE NO. 1:19CR00106 |
| Plaintiff, | ) |
| | ) |
| | ) JUDGE: DONALD C. |
| | ) NUGENT |
| vs. | ) |
| | ) |
| MALIK ABDUL AZIZ | ) |
| | ) |
| | ) |
| Defendant. | ) MOTION TO SUPPRESS |
| | ) (EVIDENTIARY HEARING |
| | ) AND FRANKS HEARING |
| | ) REQUESTED) |

Now comes the defendant, Malik Abdul Aziz, by and through his undersigned counsel, Rodger A. Pelagalli Co., L.P.A., and hereby respectfully requests this Honorable Court to suppress the physical evidence seized because of the State's unconstitutional search of Defendant at 7710 Lawn from W76. All evidence derived from the illegal search must be suppressed as "fruit of the poisonous tree," including but not limited to the illegal search of defendant's person and any evidence that was obtained as a result of that search. See, Wong Sun v. United States, 371 U.S. 484-488 (1963). The reasons for this request are more fully set forth in the attached Memorandum in Support, which is hereby incorporated by reference.

Respectfully Submitted,

/s/ rodger a. pelagalli

Rodger A. Pelagalli (0034530)
Rodger A. Pelagalli Co., L.P.A.
6659 Pearl Road, Ste. 401
Parma Heights, OH 44130
(440) 845-3030
(440) 845-3428 (Fax)
RAPesq@aol.com

Attorney for Defendant

# MEMORANDUM IN SUPPORT

## I. PROCEDURAL BACKGROUND

Defendant, Malik Abdul Aziz, was arrested on or about December 27, 2018. The defendant was arrested for carrying a concealed weapon, having weapons while under disability and carrying a concealed weapon among other charges. In the present case, he faces once charge of a felon in possession.

## II. FACTUAL BACKGROUND

On December 27, 2018, P.O. Thompson #880 was monitoring the area of 7712/7714 Lawn with his partner (Thompson report). The officer allegedly observed a Toyota traveling west on Lawn from W76(id). The car allegedly had its high beams on and upon running the plate, the owner did not show to have a valid driver's license (id). The officer then pulled behind the car as it was stopped in front of 7710 Lawn and activated their lights (id). The defendant was eventually arrested for obstructing official business, drug paraphernalia, drug abuse, and gun confiscation (id).

## III. LAW & ARGUMENT

The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. Under the Fourth Amendment, "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." "So, long as the magistrate had a substantial basis for concluding that search would uncover evidence of wrongdoing, the Fourth Amendment

requires no more." *Illinois v. Gates*, 462 U.S. 213, 236, 103 S. Ct. 2317, 76 L.E2.2d 527 (1983) (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)). In order to conclude that an affidavit establishes probable cause, the issuing Judge must find that "given all the circumstances set forth in the affidavit...there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* At 238, 103 S. Ct. 2317.

To meet the nexus requirement of probable cause, "the circumstances must indicate why evidence of illegal activity will be found in a particular place." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc). "A state search warrant being challenged in a federal court must be judged by federal constitutional standards." *Elkins v. United States*, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960); *United States v. McManus*, 719 F.2d 1395 (6th Cir. 1983). The review is limited to the four corners of the application and affidavit. *Spinelli v. United States*, 393 U.S. 410, 413 n. 3, 89 S. Ct. 584, 587 n. 3, 21 L.Ed.2d (637 (1969). The determination of probable cause should be "based upon a common-sense reading of the entire affidavit." *Spinelli*, 393 U.S. at 415, 89 S.Ct. at 588. Any evidence which is the product of the illegal search must be suppressed, and any subsequent evidence obtained as a result of such illegality should be suppressed, to wit: fruits obtained from a poisonous tree. See, <u>Wong Sun v. United States</u>, 371 U.S. 471, 83 S.Ct. 407 (1963).

The officers did not have probable cause or reasonable suspicion to stop the defendant. A reviewing court must first determine whether a search or seizure within the meaning of the Fourth Amendment occurred. "In determining whether a particular encounter constitutes a 'seizure,' and thus implicates the Fourth Amendment, the question is whether, in view of all the circumstances surrounding the encounter, a reasonable person would believe he or she was 'not free to leave,' or 'not free to decline the officers' requests or otherwise to terminate the encounter.' " *State v. Westover*, 2014-Ohio-1959, 10 N.E.3d 211 (10th Dist.), quoting *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64

4

L.Ed.2d 497 (1980) and Florida v. Bostick, 501 U.S. 429, 439, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). Accordingly, a police stop of a motor vehicle and the resulting detention of its occupants has been held to be a seizure under the Fourth Amendment. Prouse at 653, 99 S.Ct. 1391, citing United States v. Martinez–Fuerte, 428 U.S. 543, 556–558, 96 S.Ct. 3074, 3082–3083, 49 L.Ed.2d 1116 (1976); United States v. Brignoni–Ponce, 422 U.S. 873, 878, 95 S.Ct. 2574, 2578, 45 L.Ed.2d 607 (1975). *State v. McDonald*, 2017-Ohio-9250, ¶ 9, 102 N.E.3d 635, 639 d

Under the Fourth Amendment, law enforcement can conduct two types of constitutionally permissible traffic stops: (1) investigatory traffic stops and (2) traffic stops based on probable cause. State v. Andrews, 57 Ohio St.3d 86, 565 N.E.2d 1271 (1991); State v. Mays, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204. For an investigatory traffic stop to be valid, law enforcement must have a reasonable and articulable suspicion, under the totality of the circumstances, that a crime has been or is being committed. State v. Shaffer, 2013-Ohio-3581, 4 N.E.3d 400, ¶ 18 (3d Dist.), quoting State v. Bobo, 37 Ohio St.3d 177, 178, 524 N.E.2d 489 (1988), quoting Terry v. Ohio, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). For the second type of traffic stop, law enforcement must have probable cause. "Probable cause 'means less than evidence which would justify condemnation,' so that only the 'probability, and not a prima facie showing of criminal activity is the standard of probable cause.'" State v. Duvernay, 2017-Ohio-4219, 92 N.E.3d 262, ¶ 27 (3d Dist.), quoting State v. Gonzales, 3d Dist. Seneca Nos. 13-13-31 and 13-13-32, 2014-Ohio-557, 2014 WL 636805, ¶ 18. "This Court has previously recognized that probable cause for a traffic stop is provided when an officer had probable cause to believe that a traffic violation has occurred or was occurring." State v. Blandin, 3d Dist. Allen No. 1-06-107, 2007-Ohio-6418, 2007 WL 4225492, ¶ 43, citing State v. Phillips, 3rd Dist. No. 8-04-25, 2006-Ohio-6338, 2006 WL 3477003, at ¶ 18 (rev'd on other grounds by State v. Mays, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶. Random or pretextual traffic stops of vehicles that lack the minimum objective justification of reasonable suspicion

5

are not permissible under the Fourth Amendment. State v. Chatton, 11 Ohio St.3d 59, 61, 463 N.E.2d 1237, 1239 (1984) (holding a random stop without reasonable suspicion is impermissible to "to check the validity of the operator's driver's license and the vehicle's registration."), citing Prouse, supra. If the officer does make a traffic stop with the required level of objective justification, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity. Dayton v. Erickson, 76 Ohio St.3d 3, 11, 665 N.E.2d 1091 (1996). State v. McDonald, 2017-Ohio-9250, ¶¶ 10-12, 102 N.E.3d 635, 639–40.

In the McDonald case, Patrolman Brett Bethel ("Bethel") was preparing to go on his patrol when a detective reported to him that McDonald was suspected of transporting narcotics. Bethel was familiar with McDonald and had cited him in the past for driving while his license was suspended. The officers who had been on the afternoon patrol shift also told Bethel that McDonald had been spotted driving around town earlier that day in his regular vehicle. In response to this information, Bethel had dispatch check McDonald's driving status in the Law Enforcement Automated Data System ("LEADS"). Bethel consequently discovered that McDonald did not have a valid license at that time. Later, during his shift, Bethel was parked in a lot by the side of the road. In between 11:30 and 11:45 p.m., Bethel saw McDonald drive past him in a blue sedan. Tr. 14, 15. McDonald was the sole occupant of the vehicle. Bethel testified that he was able to identify McDonald without difficulty because he had encountered McDonald "numerous times throughout his career in Fostoria, specifically "McDonald driving that specific vehicle." McDonald also wore "distinctive eyeglasses," which Bethel could see from his vantage point on the side of the road. Knowing that McDonald did not have a valid driver's license, Bethel decided to initiate a stop of McDonald's vehicle. As the result of this stop, McDonald was found to be in possession of contraband and was arrested. State v. McDonald, 2017-Ohio-9250, ¶¶ 2-3, 102 N.E.3d 635, 637–38.

In the McDonald case, it was found that the motion to suppress should be denied because the LEADS run was for valid law enforcement purposes, the, the license check was not random, and the stop was not pre-textual. *State v. McDonald*, 2017-Ohio-9250, ¶ 15, 102 N.E.3d 635, 641. However, the current case is different, because the arresting officer did not know who the defendant was nor had prior dealings with Aziz as in the McDonald case. In McDonald, the officer had actual knowledge that the defendant did not have a driver's license. In the current case, the officer only knew that the owner of the vehicle did not have a driver's license. He had no constructive knowledge that the actual driver was not allowed to drive. Furthermore, the LEADS check was random. Although the officer would argue that the LEADS check was valid because the vehicle was suspicious, there was nothing suspicious about the vehicle. It is not illegal to have high beams on. ORC 4513.15(A)(1) states: "whenever a motor vehicle is being operated on a roadway or shoulder adjacent thereto during the times specified in section 4513.03 of the Revised Code, the driver shall use a distribution of light, or composite beam, directed high enough and of sufficient intensity to reveal persons, vehicles, and substantial objects at a safe distance in advance of the vehicle, subject to the following requirements: whenever the driver of a vehicle approaches an oncoming vehicle, such driver shall use a distribution of light, or composite beam, so aimed that the glaring rays are not projected into the eyes of the oncoming driver."

The officer did not mention in his report that the "glary rays projected into his eyes." He did not complain one bit about the light. Normally, a police report for pulling over a vehicle for high lights would state that the lights "blinded the officer." Having high beams on towards opposite traffic is only illegal if the high beams cause the oncoming driver to have difficulty seeing the road. Therefore, the officer did not have a reason to turn around a follow the vehicle. The Court in Prouse was unconvinced that the incremental contribution to highway safety of the random spot check justifies the practice under the Fourth. *Delaware v. Prouse*, 440 U.S. 648, 659, 99 S. Ct. 1391, 1399, 59 L. Ed. 2d 660 (1979).

7

Therefore, the license check was random. The officer did not have probable cause that a crime had been committed. The officer did not even have reasonable suspicion. The only suspicion mentioned in the report was the high beams. The high beams were not a problem for the officer's vision, so he had no reason to run the plates which is a random check. The random check only showed that the owner did not have a valid license. This does not create probable cause that the current driver of the vehicle was driving without a license. The officer had no valid reason to stop the defendant.

## IV. CONCLUSION

Based on the foregoing facts, evidence, law, and exhibits, the Cleveland officers did not have authority to stop the defendant. The officer had no prior knowledge of who the defendant was. The defendant's only alleged crime was driving with his high beams on. The officer did not state that the high beams were "blinding him." Therefore, the officer had no reason to run LEADS. This is a random check to see if the driver complies to drive a motor vehicle which is not allowed under the fourth amendment. Finally, even if the officer saw that the owner of the vehicle did not have a driver's license, he still did not know if the owner was driving. The officer did not know the defendant and had no knowledge that the defendant was driving. As a result, the defendant respectfully requests that this Court issue an order suppressing evidence in this case derived from the illegal search of the defendant. In the alternative, there are clearly contested issues of fact in this case bearing on the validity of the search which warrant an evidentiary Franks hearing.

Respectfully Submitted,

/s/ rodger a. pelagalli

Rodger A. Pelagalli (0034530)
Rodger A. Pelagalli Co., L.P.A.
6659 Pearl Road, Ste. 401
Parma Heights, OH 44130
(440) 845-3030
(440) 845-3428 (Fax)
RAPesq@aol.com

*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of July 2019 a copy of the foregoing was filed electronically. Notice of filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Respectfully Submitted,

/s/ rodger a. pelagalli

Rodger A. Pelagalli (0034530)
Rodger A. Pelagalli Co., L.P.A.
6659 Pearl Road, Ste. 401
Parma Heights, OH 44130
(440) 845-3030
(440) 845-3428 (Fax)
RAPesq@aol.com

*Attorney for Defendant*